IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DUANE S.,**[1]

    Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

Civ. No. 3:18-cv-00430-AA

**OPINION & ORDER**

AIKEN, District Judge:

Plaintiff Duane S. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

On April 4, 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. Tr. 15. Both applications alleged disability beginning December 15, 2011. *Id.* The applications were denied initially and upon reconsideration and, at Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on August 17, 2016, with a supplemental hearing held on April 3, 2017. *Id.* On May 11, 2017, the ALJ issued a decision finding Plaintiff not

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

disabled. Tr. 25. On January 12, 2018, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, December 15, 2011. Tr. 17.

At step two, the ALJ found that Plaintiff had a severe impairment of oculopharyngeal muscular dystrophy ("OPMD") manifesting primarily as bilateral ptosis. Tr. 18. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.*

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: he should not climb ladders, ropes, and scaffolds; he should not work around saws, lathes, heights, hazards, or heavy equipment; and he can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. Tr. 18.

At step four, the ALJ found Plaintiff was capable of performing his past relevant work as a nursery salesperson, caseworker, and outreach coordinator. Tr. 24. As a result, the ALJ found that Plaintiff was not disabled. Tr. 25.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that

supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly assessing the medical opinion evidence; (2) improperly discounting Plaintiff's subjective symptom testimony; and (3) improperly discounting lay witness testimony.

### I. Medical Opinion Evidence

Plaintiff contends the ALJ erred by rejecting the opinions of treating physician Aarin Meager-Benson, N.D.; treating physician William Hills, M.D., O.D.; reviewing physician Linda Jensen, M.D.; and reviewing physician Neal Berner, M.D. Plaintiff contends that the ALJ erred by instead crediting the opinion of medical expert Patrick McCaffery, M.D.

The ALJ is responsible for resolving conflicts in the medical record. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted).

An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

### A. Dr. McCaffery

The opinion of a non-examining medical expert "may constitute substantial evidence when it is consistent with other independent evidence in the record," although it does not, standing alone, constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Dr. McCaffery appeared as a medical expert at a hearing held on April 3, 2017. Tr. 37-50. Dr. McCaffery is an eye specialist and testified concerning Plaintiff's OPMD. Tr. 38-39. Dr. McCaffery did not examine Plaintiff but examined the relevant medical records. Tr. 38. Dr. McCaffery testified that Plaintiff had 20/20 acuity and that his horizontal field of vision is "quite good." Tr. 39-40. Plaintiff's drooping eyelid "only reduces his field [of vision] by 15 or 20 degrees at the most." Tr. 40. Only Plaintiff's ability to look up is affected and Plaintiff's straight-ahead vision is unaffected, as is his vision to the left, right, and down. *Id.* Dr. McCaffery testified that Plaintiff's condition can be remediated with medication and/or surgery, although Dr. McCaffery agreed that Plaintiff did not presently require surgical intervention. Tr. 40, 45. Dr. McCaffery opined that, as Plaintiff's vision was 20/20, it was unlikely that Plaintiff experienced blurry vision. Tr. 41.

As a result of Plaintiff's limited field of upward vision, Dr. McCaffery testified that Plaintiff should not work with heavy equipment, unprotected heights, ladders, or scaffolds. Tr.

41. Dr. McCaffery testified that Plaintiff's OPMD would not interfere with Plaintiff's ability to be on his feet, walk around, or stand in one position. Tr. 49.

The ALJ gave "great weight" to Dr. McCaffery's opinion "in light of his expertise as a Board-certified ophthalmologist." Tr. 22. This is an appropriate consideration. *See Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (it is appropriate to give more weight to the opinion of a specialist concerning matters relating to their specialty over that of non-specialists). The ALJ noted that Dr. McCaffery had had the opportunity to review all the evidence except for the opinions of Dr. Meager-Benson and Dr. Hill and that Dr. McCaffery's opinion was consistent with the medical evidence in the record. Tr. 22. This is also an appropriate consideration. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."). The Court therefore concludes that the ALJ properly weighed the opinion of Dr. McCaffery.

**B. Dr. Meager-Benson**

In April 2017, Dr. Meager-Benson submitted a medical report concerning Plaintiff's functional limitations. Tr. 633-36. In that report, Dr. Meager-Benson stated that he began treating Plaintiff in May 2016 and that Plaintiff suffers from severe visual impairment, vertigo, dysphoria, muscle weakness, shortness of breath, inability to ambulate without assistance, ptosis, and diplopia. Tr. 633-34. Dr. Meager-Benson reported that Plaintiff cannot lift or carry any weight, that he cannot stand or walk, and that he can sit but is unable to read or do activity while sitting due to visual impairments. Tr. 634. Dr. Meager-Benson reported that Plaintiff can never push, pull, climb, balance, stoop, bend, kneel, crouch, crawl, reach, handle, finger, or feel. *Id.* He is limited in his ability forcefully or repetitively use his arms or hands due to muscle wasting. Tr.

635. He can never reach or handle but can occasionally finger or feel "by feeling only, he cannot see what he is doing well" and his "reaching and grasping are limited by grip weakness." *Id.* He experiences occasional pain and nervousness, and frequent fatigue, weakness, shortness of breath with exertion, and daily episodes of vertigo. Tr. 636. Dr. Meager-Benson opined that Plaintiff would miss more than two days per month because exertion would worsen his pain and weakness. *Id.*

The ALJ gave Dr. Meager-Benson's opinion little weight. Tr. 23. The ALJ noted that Dr. Meager-Benson's opinion concerning Plaintiff's ability to see was inconsistent with Dr. McCaffery's testimony concerning the limitations on Plaintiff's vision, with Plaintiff's treatment records, and with Plaintiff's reported levels of activity. *Id.* The ALJ also noted that Dr. Meager-Benson had a very limited treatment history with Plaintiff and had treated him on only two occasions prior to the hearing. *Id.* Critically, the ALJ noted that Dr. Meager-Benson's opinion was internally inconsistent, in that it simultaneously opined that Plaintiff could never finger or feel and that he could occasionally finger and feel. Tr. 23; 634-35. Such internal inconsistencies constitute specific and legitimate reasons for discounting a medical opinion. *Houghton v. Comm'r*, 493 F. App'x 843, 845 (9th Cir. 2012).

The Court concludes that the ALJ properly supported his decision to assign little weight to Dr. Meager-Benson's opinion.

**C. Dr. Hills**

In April 2017, Dr. Hills submitted a medical opinion report for Plaintiff. Tr. 645-47. Dr. Hills reported that he had seen Plaintiff twice, in July 2014 and in July 2015. Tr. 645. Dr. Hills reported that "sustained, repetitive use" of Plaintiff's arms "will cause fatigue." Tr. 646. Dr. Hills opined that Plaintiff was limited to occasional reaching and handling and frequent fingering and

feeling. *Id.* Dr. Hills reported that Plaintiff experienced frequent fatigue, weakness, shortness of breath, and blurred and double vision. Tr. 647. Dr. Hills opined that Plaintiff would miss two or more days per month due to his progressive muscular dystrophy and that he would be prevented from using a computer for more than twenty minutes due to Plaintiff's ptosis, dry eyes, and diplopia. *Id.*

The ALJ gave "little weight" to Dr. Hills opinion, noting that "[a]lthough Dr. Hills was provided seven pages of claimant's medical records for his review, he reported that he had examined the claimant on only two occasions, i.e., July 10, 2014 and July 13, 2015, and thus had not seen him for more than one year." Tr. 24. The ALJ also noted that Dr. Hills's examination had revealed 20/20 vision in Plaintiff's right eye and 20/25 in his left eye, in addition to full visual fields. Tr. 20, 480. Dr. Hills also found that Plaintiff had symmetric and normal strength, with normal bulk and tone, with intact sensation, normal stride length and cadence, and normal posture. Tr. 20, 482. Dr. Hills's second treatment note indicted that Plaintiff had intact and symmetric sensation in his upper and lower extremities with normal gait. Tr. 577.

On this record, the Court concludes that the ALJ gave sufficient justification for discounting Dr. Hills's opinion.

### D. Dr. Jensen

Dr. Jensen opined that Plaintiff was limited to occasionally lifting and carrying twenty pounds; frequently lifting and carrying ten pounds; standing and walking for two hours; and sitting for six hours in an eight-hour day. Tr. 98. Dr. Jensen opined that Plaintiff was limited to frequently climbing ramps and stairs; occasionally climbing ladders, ropes, and scaffolds; frequent balancing, stooping, kneeling, crouching, and crawling. Tr. 98-99. Dr. Jensen found that Plaintiff had limited

left-right vision and "needs to move his head to compensate for his ptosis," and that he must avoid "even moderate exposure" to hazards. Tr. 99-100.

The ALJ gave "little weight" to Dr. Jensen's opinion as to Plaintiff's exertional limitations, finding that it was "inconsistent with medical records which typically reveal normal strength and gait improved with physical therapy." Tr. 22. The ALJ gave "some weight" to Dr. Jensen's opinion regarding postural and environmental limitations, but the ALJ "included additional restrictions to never climbing ladders, ropes and scaffolds and that the claimant should avoid saws, lathes and heavy equipment based on the testimony of Dr. McCaffery." *Id.*

The ALJ's conclusions concerning Plaintiff's postural limitations are supported by the record. *See* Tr. 457-58 (March 2014, Plaintiff shows normal motor strength and tone, normal movement, normal gait and station); 481-82 (July 2014, strength "symmetric and normal throughout, tone and bulk normal," normal stride length and cadence, normal posture); 538 (October 2014, normal strength and tone, normal movement, normal gait and station); 547 (June 2016, some gait abnormalities observed but "improved following exercise."); 641 (August 2014, "essentially" unremarkable gait). The Court concludes that the ALJ properly discounted Dr. Jensen's opinion.

**E. Dr. Berner**

Dr. Berner found that Plaintiff was limited to frequently climbing ramps and stairs; occasionally climbing ladders, ropes, and scaffolds; and frequently balancing, stooping, kneeling, crouching, and crawling. Tr. 123. Dr. Berner found that Plaintiff's vision was limited from left to right. *Id.* Dr. Berner found that Plaintiff needed to move his head to compensate for his ptosis and needed to avoid even moderate exposure to hazards. Tr. 124. The ALJ gave "significant weight" to Dr. Berner's "opinion regarding the limitations not associated with visual function

because it is consistent with the record," but the ALJ "included additional limitations based on the testimony of Dr. McCaffery." Tr. 23.

Of note, Dr. Berner did not assign exertional limitations as Dr. Jensen did. As discussed in the previous section, the ALJ properly considered Plaintiff's treatment records and the opinion of Dr. McCaffery in assigning weight to Dr. Berner's opinion.

## II. Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting his subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle*, 533 F.3d at 1160.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

At the hearing, Plaintiff testified that his last job had been at a gardening store and that he had stopped working because he lacked the strength to lift the plants. Tr. 63-64. Plaintiff estimated that he could "probably" lift ten pounds but that twenty pounds "would be kind of a push." Tr. 73. Plaintiff testified that he experiences fatigue and that he has choking episodes "at least a couple of times a month." Tr. 75. Plaintiff testified that he was not taking any medications and that no medications had been recommended. Tr. 66-67. Plaintiff testified that he had lost weight, primarily in lost muscle mass. Tr. 67.

Plaintiff estimated that he could walk for three or four blocks before he would "get really exhausted." Tr. 67. Plaintiff testified that he could sit for half an hour before needing to stand. *Id.* Plaintiff testified that it takes him "quite a while" to go up or down stairs and that he had developed a shuffling gait because his legs were not in sync with one another. Tr. 68. He estimated that, despite having been an avid hiker, he could hike for only twenty minutes. Tr. 69. Plaintiff disagreed with an assessment saying that his gait improved with exercise. Tr. 72.

Plaintiff received a Medical Assistant certificate in 2013. Tr. 61. He never worked as a medical assistant because of his vision and fatigue, although he "went to a couple interviews and it never panned out." Tr. 76. Plaintiff testified that he has an Oregon driver's license with no restrictions, although he does not generally drive for more than twenty minutes because of blurred vision. Tr. 60. Plaintiff manages his own grooming, cooking, and laundry and that he goes to the store with his partner. Tr. 69. Plaintiff noticed that he was having difficulty managing household chores in 2015. Tr. 70.

In terms of vision, Plaintiff testified that he experiences blurry vision after looking at a computer screen for twenty minutes and that he had experienced double vision for two or three years prior to the hearing. Tr. 70-71. Plaintiff takes over-the-counter artificial tears to treat his

dry eyes. Tr. 72-73. Plaintiff believed that his blurred vision and weakness would make it difficult for him to return to his past work. Tr. 74.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce his symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 19. First, the ALJ noted that Plaintiff's testimony was not fully supported by the treatment records and objective evidence. *Id.* "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle*, 533 F.3d at 1161.

The ALJ's conclusion is supported by substantial evidence. In March 2014, Plaintiff had normal strength and tone, normal movement of all extremities, and normal gait and station. Tr. 465. In July 2014, Plaintiff showed normal strength, bulk, and tone, and normal stride length and cadence. Tr. 482. In October 2014, Plaintiff showed normal strength and tone and normal gait and station. Tr. 538. In January 2015, Plaintiff was found to have "essentially unremarkable" gait. Tr. 641. In May 2016, Plaintiff's gait was "tentative and slow," but there were no gross musculoskeletal abnormalities. Tr. 525. In June 2016, Plaintiff showed some weakness and gait abnormality, but his physical therapist reported that the gait abnormalities "improved following exercises." Tr. 547. In August 2016, Plaintiff had normal gait and intact sensation. Tr. 577. On this record, the Court concludes that the ALJ reasonably considered the medical record in assessing Plaintiff's testimony.

The ALJ also found that Plaintiff "has described engaging in activities during the period at issue that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Tr. 21. Consideration of daily activities is proper when they indicate activity or skills that are transferable to the workplace, or when the activities contradict the claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

As noted, Plaintiff was able to complete a medical assistant certification after the alleged onset date. Tr. 73. Plaintiff testified that he is able to manage his own hygiene, cook, shop, and do laundry with his partner. Tr. 69. In March 2014, Plaintiff reported that he "hikes a lot at Rainier." Tr. 460. In January 2015, Plaintiff reported to his physician that he "likes to hike and is still able to hike at least six miles without fatigue." Tr. 639. In September 2015, Plaintiff sought treatment for a kidney stone and reported that he was otherwise feeling well and was leaving for a trip to Europe. Tr. 596. On this record, the Court concludes that the ALJ reasonably found that such activities were inconsistent with the degree of limitation alleged by Plaintiff.

Accordingly, the Court concludes that the ALJ provided sufficient support for his decision to discount Plaintiff's subjective symptom testimony.

### III. Lay Witness Testimony

Plaintiff contends that the ALJ erred by rejecting the lay witness testimony of Plaintiff's domestic partner, Peter L. An ALJ must take into account lay witness testimony as to the severity of a plaintiff's symptoms. *Nguyen v. Charter*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ may

discount lay witness testimony by providing "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

In May 2014, Peter L. reported that Plaintiff had difficulty seeing and swallowing as a result of his OPMD. Tr. 326. Peter L. reported that Plaintiff had no problem with personal care and needed no reminders for taking care of personal needs, grooming, or tasking medication. Tr. 327-28. Peter L. reported that Plaintiff prepares his own meals on a daily basis and that he is able to do the laundry and clean house. Tr. 328. Plaintiff has trouble kneeling and then getting back up. *Id.* He goes outside daily, where he walks, drives, and rides in a care. Tr. 328-29. Plaintiff can go outside alone and can drive. Tr. 329. He shops for groceries, handles his own money, and pays his own bills. *Id.* He enjoys watching television, reading, and visiting friends. Tr. 330. He has some difficulty reading, and sometimes has trouble seeing the television due to blurred vision. *Id.* He has choked on food on occasion. *Id.* Peter L. reports that Plaintiff has trouble lifting, walking, kneeling, climbing stairs, and seeing. Tr. 331. He can walk for a few blocks or up to ten minutes before needing to rest. *Id.* He can pay attention, follow written or spoken instructions, and gets along with authority figures without difficulty. *Id.*

In August 2016, Peter L. submitted a second report, in which he reported that Plaintiff's symptoms had worsened. Tr. 367. Plaintiff experienced blurred vision, difficulty focusing, and eye strain after twenty minutes of reading, watching television, or driving. *Id.* Peter L. reported that Plaintiff's difficulty swallowing had increased and that he had issues with muscle weakness and fatigue. *Id.* Peter L. reported that Plaintiff had been able to do four hours of "intense" yard work as recently as 2015 but was no longer able to do so. Tr. 368. Peter L. reported that Plaintiff was no longer able to go on lengthy hikes, as he had been able to do a year earlier. *Id.*

The ALJ gave "some weight" to Peter L.'s 2014 testimony, "to the extent that the claimant has some work-related functional limitations." Tr. 24. The ALJ found that the 2014 report was "not entirely supported by the treatment records," and "does not indicate that the claimant is completely disabled." *Id.* In particular, the ALJ noted that Peter L.'s report showed that Plaintiff was able to take walks, perform self-care activities independently, prepare simple meals, do laundry and cleaning, drive a car, and shop for groceries in stores. *Id.* The ALJ gave "very little weight," to Peter L.'s 2016 report "because it is not consistent with the treatment records or the testimony of Dr. McCaffery." *Id.* Inconsistency with medical evidence is a sufficient germane reason for discounting lay witness testimony, as is inconsistency with the record of a claimant's activities. *Bayliss*, 427 F.3d at 1218. For the reasons discussed in the previous sections, the Court concludes that the ALJ's reasoning was supported by substantial evidence. The ALJ did not err in discounting the lay opinion of Peter L.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

It is so ORDERED and DATED this     28th     day of April 2021.

                                       /s/Ann Aiken
                                       ANN AIKEN
                                       United States District Judge